
MARILYN E. BEDNARSKI, SBN 105322
E-Mail: mbednarski@mbllegal.com
McLane, Bednarski & Litt, LLP
975 East Green Street
Pasadena, California 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

ABBE DAVID LOWELL, *pro hac vice*
DAVID A. KOLANSKY, *pro hac vice*
E-Mail: alowellpublicoutreach@lowellandassociates.com
Lowell & Associates, PLLC
1250 H Street, NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
Facsimile: (202) 964-6116

Attorneys for Defendant
DAVID HUERTA

WESTERN DIVISION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　*Plaintiff*,<br><br>　　v.<br><br>DAVID HUERTA,<br><br>　　　*Defendant*. | CASE NO.: 2:25-CR-00841-SB<br><br>**DEFENDANT'S MOTION TO DISMISS INFORMATION FOR FAILURE TO STATE AN OFFENSE**<br><br>Date: February 3, 2026 (PTC)<br>(Hearing Length Estimate: 1 hour)<br>Time: 8:00 a.m.<br>Ctrm: 6C (1st Street U.S. Courthouse) |

**NOTICE OF MOTION**

Defendant David Huerta, by and through undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for an order dismissing the Information against him because it fails to state an offense in violation of Title 18 U.S.C. § 1501, a Class A misdemeanor.

On December 17, 2025, counsel for Mr. Huerta and the government conferred by telephone regarding the government's position on our request that they specify what conduct on June 6, 2025 constituted his "knowingly and willfully, obstruct[ing], resist[ing], and oppos[ing] an officer of the United States" in serving and executing a search warrant alleged in the Information, in violation of Section 1501.[1] ECF 29. Government counsel indicated on the phone and in follow-up correspondence dated December 19, 2025 that the government's theory of criminal liability is based on what they described as "Mr. Huerta's course of conduct"[2] on June 6, from his arrival outside the search warrant location at approximately 11:49 a.m. to approximately 12:15 p.m., when Mr. Huerta was thrown to the ground and detained by federal agents.

On January 5, 2026, defense counsel conferred by video with and advised the government of its intention to file this motion to dismiss the Information for failure

---

[1] Counsel for Mr. Huerta first requested that the government identify the specific conduct that constituted "obstruct, resist, and oppose an officer" alleged in the Information in a letter to government counsel, dated November 5, 2025. Defense counsel's letter went unanswered until December 19, 2025.

[2] Mr. Huerta also is moving to dismiss the Information on grounds that the statute the government has used here to charge him (particularly its criminalizing the wide-ranging and vague word "opposes" in the statute to some government conduct) is unconstitutional on its face as an overbroad restriction of the First Amendment's right to free speech and an unconstitutional violation as applied because Mr. Huerta's "course of conduct" clearly included his speaking protests against the government's actions at the scene.

1

to state an offense, and government counsel indicated that it would oppose the motion.

Dated: January 6, 2026

Respectfully submitted,

LOWELL & ASSOCIATES, PLLC

By: */s/ Abbe David Lowell*
      Abbe David Lowell

MCLANE, BEDNARSKI & LITT, LLP
By: */s/ Marilyn E. Bednarski*
      Marilyn E. Bednarski

*Attorneys for Defendant David Huerta*

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITES ............................................. 1

   I.   THE INFORMATION FAILS TO STATE AN OFFENSE IN VIOLATION OF SECTION 1501 AGAINST MR. HUERTA. ............................................. 1

        A.   The Activity Investigated By the Government Is Unrelated to the Service and Execution Of Any Search Warrant. ................................... 3

        B.   The Information Does Not Allege that Mr. Huerta Obstructed, Impeded, and Opposed a Government Vehicle and Provides No Indication, Given the Statute's Breadth, of the Actual Charged Activities. .............................................................................................. 8

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland*,
　373 U.S. 83 (1963)..................................................................................................5

*Pettibone v. United States*,
　148 U.S. 197 (1893) ...............................................................................................9

*Pierce v. United States*,
　314 U.S. 306 (1941) .............................................................................................11

*Skilling v. United States*,
　561 U.S. 358 (2010) .............................................................................................10

*United States v. Boren*,
　278 F.3d 911 (9th Cir. 2002) ...........................................................................3, 10

*United States v. Buckley*,
　689 F.2d 893 (9th Cir. 1982) ...............................................................................10

*United States v. Enmons*,
　410 U.S. 396 (1973) .............................................................................................10

*United States v. Jensen*,
　93 F.3d 667 (9th Cir. 1996) ...................................................................................3

*United States v. Nosal*,
　2010 WL 934257 (N.D. Cal. Jan. 6, 2010).........................................................10

*United States v. Panarella*,
　277 F.3d 678 (3d Cir. 2002) ................................................................................10

*United States v. Peifer*,
　474 F. Supp. 498 (E.D. Pa. 1979).........................................................................2

*United States v. Spencer*,
　517 F.2d 923 (9th Cir. 1975) ...............................................................................11

*United States v. Tinklepaugh*,
　28 F. Cas. 193 (C.C.S.D.N.Y. 1856) .....................................................................9

*United States v. Willis*,
    844 F.3d 155 (3d Cir. 2016) ................................................................................. 10

**Statutes**

18 U.S.C. § 1501 ............................................................................................. *passim*

R.S. § 5398 (1878) ..................................................................................................... 9

**Rules**

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) ................................................. 9

Federal Rule of Criminal Procedure 41(c) ......................................................... 3, 4

# MEMORANDUM OF POINTS AND AUTHORITES

## I. THE INFORMATION FAILS TO STATE AN OFFENSE IN VIOLATION OF SECTION 1501 AGAINST MR. HUERTA.

Mr. Huerta is charged with "knowingly and willfully, obstruct[ing], resist[ing], and oppos[ing]" a federal officer of the United States in serving and attempting to serve and execute a judicial writ of a court or signed by a Magistrate Judge, in violation of 18 U.S.C. § 1501, but Section 1501 is not applicable to his alleged activity on June 6, 2025. 18 U.S.C. § 1501.

Specifically, here, the Information charges Mr. Huerta with "obstruct[ing], resist[ing], and oppos[ing] . . . *namely, a search warrant* for the premises at 2415 East 15th Street, Los Angeles, California 90021 [Ambiance Apparel]" in connection with a separate case (No. 2:25-mj-03427). ECF 29 at 1-2 (emphasis added). The Information *does not* specify the officer or officers who were obstructed, resisted, and opposed in serving and executing that warrant. Nor does it indicate what law enforcement activity was even hampered by the defendant's activity. And yet, the activity that the government repeatedly asked agents about, and scrutinized in its investigatory interviews of this case, is Mr. Huerta's protesting and verbal criticisms of federal law enforcement activities and his standing beside an unmarked government van while it briefly flashed its emergency lights and slowly entered a driveway and then through the gate of the subject premises. It certainly seems from the discovery provided that whatever "search warrant" was involved inside the gate and building outside of which Mr. Huerta was confronted had already been served and executed. By definition, search warrants are to obtain evidence.[3] The evidence

---

[3] If the government is actually alleging that Mr. Huerta somehow obstructed, resisted and opposed the movement of an unmarked van which ultimately entered and was used to transport workers detained *inside* the building for suspected

1

behind the gate and within the Ambiance warehouse had already been gathered before the government alleges that Mr. Huerta did the crime charged.

"To prove the offense charged, the government [is] required to establish that the officer was attempting to execute judicial process of a United States magistrate, that the defendant obstructed, resisted or opposed the officer, and that the defendant acted knowingly and willfully." *United States v. Peifer*, 474 F. Supp. 498, 505 (E.D. Pa. 1979) *aff'd*, 615 F.2d 1354 (3d Cir. 1980). Critically, however, the Information *does not* charge Mr. Huerta with obstructing, resisting, or opposing *the van*—it charges him with obstructing, resisting, and opposing federal agents in their service and execution of "namely, a search warrant for the premises" of the subject property. Because the van had no role in, involvement with, or bearing on the service and execution of the warrant at issue—and because that conduct is not charged in this Information—the Information is deficient and fails to state an offense in violation of Section 1501 against Mr. Huerta. In fact, the government initially charged Mr. Huerta on June 8, 2025 with violating 18 U.S.C. § 372, conspiring to "impede" an officer. *United States v. Huerta*, No. 2:25-mj-03504-DUTY, ECF 1 (Complaint) (C.D. Cal.). The criminal complaint in that charge describes conduct that might have attempted to address or encompass what Mr. Huerta is alleged to have done. It alleges, for example, that Mr. Huerta "stood in front" of the path of the un-marked government van "with his hands on his hips," *see* Compl. ¶ 23, and that *other protesters* "continued to block the van and had to be physically removed from the van's path" to permit it to enter through the premises' gate. *Id.* ¶ 25. However, the government dismissed that charge and instead is proceeding on a 18 U.S.C. § 1501 misdemeanor, which is narrower and addresses different conduct.

---

immigration violations, that is neither what the statute addresses nor what the specific charge in this case alleges.

In ruling on a pre-trial motion to dismiss an information for failure to state an offense, the Court is strictly "bound by the four corners of" the charging document, here an Information. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citing *United States v. Jensen,* 93 F.3d 667, 669 (9th Cir. 1996) and collecting Ninth Circuit cases). We address this issue and the relevant legal arguments in Section I.B below, after setting out the factual context for the Court.

### A. The Activity Investigated By the Government Is Unrelated to the Service and Execution Of Any Search Warrant.

The search warrant for 2415 East 15th Street, Los Angeles, signed on June 5, 2025 in Los Angeles, by Magistrate Judge Margo Rocconi, and executed the following morning on June 6, 2025, describes the premises to be searched as "a large warehouse with the markings 'ambiance' written near the top of the structure." **Bednarski Declaration, Ex. A** at 3. Attachment B to the warrant denoted the "Items To Be Seized," among them, employment records, personnel files, video files, photographs, employee identification and immigration documents, any correspondence with government agencies pertaining to employment, documents pertaining to the true identities of certain individuals, documents and records pertaining to business ownership and management, records relating to recruitment and hiring, communications concerning any fraudulent identification documents, and identity documents, as well as any digital devices containing evidence within the scope of alleged crimes or categories of items to be seized. *Id.* at 5–8. In sum, the search was for, among other things, documents, records, and digital/electronic devices.

In the agent's application for a warrant, the probable cause basis for the June 6 search of Ambiance Apparel, under Federal Rule of Criminal Procedure 41(c), expressed similar documentary evidence, contraband, and property designed or intended for use in committing a crime. Notably, left *un-checked* as a basis for the

search was any "person to be arrested or a person who is unlawfully restrained." *Id.* at 1.

> **APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**
>
> I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
>
> See Attachment A-3
>
> located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:
>
> See Attachment B
>
> The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
> ☒ evidence of a crime;
> ☒ contraband, fruits of crime, or other items illegally possessed;
> ☒ property designed for use, intended for use, or used in committing a crime;
> ☐ a person to be arrested or a person who is unlawfully restrained.

**Ex. B** at 1. Likewise, the HSI briefing PowerPoint used to brief law enforcement officers who would be conducting the search instructed agents to "[s]earch and seize any I-9 *paperwork* or for evidence of fraudulent *documents*, facilitation of employing illegals, etc." **Ex. K** at 21 (emphases added). It stressed that HSI is "mostly interested in searching and seizing computers for HR personnel." *Id.*

The search began at approximately 9:20 AM Pacific Daylight Time, with HSI, ICE ERO, FBI, and DEA special agents serving the search warrant and entering the front door of the Ambiance business. **Ex. C** at 5 (Report of Investigation). Mr. Huerta would not arrive for approximately another *two* hours. Agents began searching and clearing the office space and warehouse for any additional subjects that were hiding to avoid arrest. *Id.* According to the van driver (Brian Gonzalez), he received a call on the morning of June 6 instructing him to report to Ambiance Apparel (the target address of the search) in a transport van for the purpose of

4

"transport[ing] *10 detainees*" from Ambiance.[4] **Ex. D** at 2 (emphasis added). After dropping off those detainees elsewhere, Mr. Gonzalez was instructed to return back to Ambiance Apparel to pick up "more outstanding detainees." *Id.* He drove the white government-owned van to Ambiance, and upon arriving, he "noticed a large protest near the main gate." *Id.* There is no suggestion or assertion that the transport van ever transported anything other than human detainees from Ambiance Apparel (i.e., not the materials seized pursuant to the warrant that had been served and executed). *See also* **Ex. K** at 22 (HSI Briefing PPT, noting "a van" would be used for the "transportation of bodies").

The undercover HSI officer recorded Mr. Huerta arriving on scene outside Ambiance Apparel at approximately 11:49 AM. **Ex. E** at 5 (Counter Surveillance Report). At approximately 12:15 PM, according to agent accounts and video evidence, the unmarked white van with its air horn and emergency lights briefly activated pulled up to the apron of the driveway of Ambiance Apparel to enter. *Id.* at 8. The driver activated the van's lights and air horn "to let *law enforcement* at [Ambiance Apparel] *know* he was there"—and *not* to alert the protesters who had gathered by the gate to disperse. **Ex. D** at 3 (emphases added). Government investigative reports allege that, at this moment, agents "observed Huerta blocking and impeding the [U.S. government] law enforcement vehicle by standing in the front of the vehicle by the driver's side near the driver's side headlight and driver's side bumper." **Ex. C** at 11 (Agent Ribner Report). One HSI officer stated, during a

---

[4] The government has not produced any evidence supporting in any way, and the facts are not disputed here, that the van driver, Brian Gonzalez, participated in the search or execution of the warrant on June 6, including and not limited to, his not having transported any documents, reports, or evidence seized pursuant to the warrant. Any information (records or testimony) indicating that it was someone other than Mr. Gonzalez would be discoverable pursuant to the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

5

post-arrest interview, that he witnessed Mr. Huerta "straddle the hood of the van" and "throw his body across [the van] 'making his body an X.'" **Ex. F** at 2 (Detention and Deportation Officer Crook Report). That same officer concluded that he believed Mr. Huerta was "impeding the van." *Id.* Officer Crook also told his supervisor after the June 6 incident that "Huerta was getting in the way of the vehicle and being obstructive and violent." **Ex. J** at 2. The van driver (Brian Gonzalez) was shown a video from that day and initially stated that he "*did not recall* seeing David Huerta in front of the van." **Ex. D** at 3 (emphasis added). Nearly three weeks later, after prosecutors and agents met with him again and conducted a follow up interview with Mr. Gonzalez (this time without showing him the video), he stated, for the first time, that he now "*vaguely* remembered Huerta in front of the vehicle" but he "did not remember Huerta make his body into an X" or ever touching the government van at any point. *Id.* (emphasis added).

      Mr. Huerta contests the agents' after-the-fact renditions of where he was and what he said. Nevertheless, across a dozen agent interviews after the June 6 incident, prosecutors and investigating agents time and again asked about, and focused on, Mr. Huerta's protest and alleged blocking and impeding a government van and the events surrounding the van's entrance to the premises. Yet not a single interview inquired about any purported obstruction by Mr. Huerta of the *service or execution of the search warrant* at the Ambiance Apparel site. The van—which Mr. Huerta while standing off to the side of the front bumper allegedly blocked according to a handful of agents—had *nothing* to do with the service or execution of the Ambiance Apparel warrant, the seizure of documents, records, and digital/electronic devices, or the return of said materials and devices. The transport van was called, and arrived, for a separate and unrelated purpose—to "transport" detained individuals whom government agents encountered (and detained) while operating *inside* the Ambiance warehouse during their search. *See* **Ex. D** at 2.

There can be no dispute that the van was, at best, auxiliary to service and execution of the warrant. As further evidence that the van had no connection to the service and execution here, the government indicated "[t]here were approximately 56 federal agents who [were] involved in 'serv[ing] and execut[ing] any legal judicial writ and process' at the Search Warrant location on June 6, 2025" and pointed defense counsel to USAO-9-22-2025_00000107-116 for a full list of the agents involved in the search that day. **Ex. G** (12/19/25 Email from DOJ to Defense Counsel); **Ex. H** (Enforcement Operation Plan for Ambiance Search Warrant). Among the four-page list of agents who participated in the "search team," "arrest team" or had another assignment, one role and name is noticeably absent: a transport or van driver, and the name 'Brian Gonzalez' is not listed. **Ex. H**. The rationale is obvious and there is no factual dispute here: the van and the transport driver had no role in, or bearing on, serving or executing the search warrant at Ambiance Apparel on June 6. Thus any brief impediment to the van (if it even occurred) was, at best, collateral to a warrant that already had been served and executed inside.

The face of the warrant and after-the-fact investigative reports and files make clear what has been known from the start: Mr. Huerta, no matter what may have transpired outside the premises' gates, did not hinder any agent's service or execution of the search warrant in any manner—in fact, the search having started at 9:20 a.m. was already in progress and well under way, if not nearly complete, by the time Mr. Huerta arrived two hours later or the van arrived on the scene at around 12:15 PM to pick up and transport detainees. Whatever transpired at the driveway entrance, outside the front gate of Ambiance Apparel (a gate which remained closed throughout Mr. Huerta being on the scene except to allow the one van to pass through while he was there at the scene), it had no bearing on or relation to execution of the search warrant for business records, immigration documents, electronic devices, and the like. At no point during the search was Mr. Huerta *ever* inside of the Ambiance

Apparel gate, wherein agents were actually serving or executing the warrant charged in the Information, such that he could obstruct, resist, and oppose any officer executing the warrant.[5] And for its part, despite what the government charges against Mr. Huerta and the fact that the evidence shows numerous other protesters "block[ing]" its way (*see* Compl. ¶ 25), the government van safely entered the premises at Ambiance Apparel without serious delay or impediment. **Ex. D** at 2.

### B. The Information Does Not Allege that Mr. Huerta Obstructed, Impeded, and Opposed a Government Vehicle and Provides No Indication, Given the Statute's Breadth, of the Actual Charged Activities.

The government's assertion that Mr. Huerta "knowingly and willfully obstruct[ed], resist[ed], and oppos[ed]" the service and execution of a search warrant (Information, ECF 29 at 1-2) is merely a recitation of the statutory text and is incompatible with his alleged activity in this case. When Mr. Huerta asked the government to identify the specific conduct that constituted "obstruct, resist, and oppose an officer" alleged in the Information, *see* **Ex. I** at 2, the government indicated that its theory of criminal liability is based generally on "Mr. Huerta's course of conduct" on June 6. **Ex. G**. The "course of conduct" includes from the time of his arrival outside Ambiance Apparel, the search warrant location, at approximately 11:49 a.m. to approximately 12:15 p.m., when Mr. Huerta was thrown to the ground and detained by federal agents.

---

[5] In Mr. Huerta's additional motion to dismiss, he raises that the statute and its application to him in this case violates his due process rights both as to how the conduct described concerning the van could possibly amount to the Section 1501 charge of impacting the evidentiary warrant, and how he would have any notice of when his protesting conduct (e.g., yelling at officers, sitting on the sidewalk) became criminal for impacting what had occurred behind the gate, and inside a warehouse many yards away where he never was located.

Under Section 1501's virtually-identical predecessor statute (R.S. § 5398),[6] "an indictment under this section *must distinctly state and charge* that a legal process, warrant, etc., was issued . . . and was in the hands of some officer of the United States for service, *who had authority to serve that same*, and that, after such process was in the hands of the officer for service, some one knowingly and willfully obstructed, resisted, or opposed him in serving, or attempting to execute, the same." *Pettibone v. United States*, 148 U.S. 197, 205–06 (1893) (emphases added). In this case, however, Mr. Huerta never obstructed or impeded an agent with authority to serve the warrant, nor does the Information allege the transport driver was on the scene to serve or execute the warrant or even had such authority. In fact, critically, the van driver, Mr. Gonzalez is not a law enforcement agent—he is "a *government contractor* with G4S as Detention Officer which includes transportation duties of apprehended subjects whom are detained for immigration violations." **Ex. D** at 2. It cannot be that a government contractor with "transportation duties," called to the premises by a Deportation Officer *after* service of the warrant and the search was already underway or finished, who is *not listed* among the "56 federal agents who [were] involved in 'serv[ing] and execut[ing]'" the Ambiance Apparel warrant on June 6, and who is not a full-time United States law enforcement offer, "had authority to serve" the search warrant which Mr. Huerta is accused of obstructing, resisting, and opposing. *Pettibone*, 148 U.S. at 206.

In ruling on a pre-trial motion to dismiss an information for failure to state an offense under F.R.Cr.P. 12(b)(3)(B)(v), courts are strictly "bound by the four corners

---

[6] Under the Revised Statutes of 1878, Section 5398 provided that every person who knowingly and willfully obstructs, resists, or opposes any officer of the United States, in serving, or attempting to serve or execute, any mesne process or warrant, or any rule of, or order of, any court of the United States, may be imprisoned and fined. *Pettibone v. United States*, 148 U.S. 197, 206 (1893); *see also United States v. Tinklepaugh*, 28 F. Cas. 193 (C.C.S.D.N.Y. 1856).

of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (collecting cases). "The indictment either states an offense or it doesn't." *Id.* "[A] defendant may move to dismiss on the grounds that 'the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016); *see also United States v. Enmons*, 410 U.S. 396, 412 (1973) (dismissing indictment). General allegations setting forth the elements of the offense are insufficient where the specific factual allegations charged fail to allege a crime. *See United States v. Nosal*, 2010 WL 934257, at *2 (N.D. Cal. Jan. 6, 2010) ("General conclusory allegations need not be credited . . . when they are belied by more specific allegations in the [indictment].") (citation omitted), *aff'd*, 676 F.3d 854 (9th Cir. 2012); *see also United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002) (rejecting government argument "that an indictment . . . charges an offense . . . as long as it recites in general terms the essential elements of the offense, even if the specific facts alleged in the charging instrument fail to satisfy those elements"), *abrogated on other grounds*, *Skilling v. United States*, 561 U.S. 358 (2010). A court considering the sufficiency of an indictment looks to whether the indictment adequately alleges the offense and fairly informs a defendant of the charged conduct. *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982) (citation omitted). This analysis is part of the court's duty to examine the government's indictment and confirm that a legally deficient charge does not go to the jury.

   As explained above, the Information does not allege any indication—let alone offer any details—about Mr. Huerta's alleged criminal activity on June 6 or how that activity impeded service and execution of the search warrant. It does not describe when, where, or how Mr. Huerta purportedly obstructed the warrant at or inside Ambiance Apparel—because he did not interfere with the execution of that warrant *or* the collection of any items to be seized by it. Nor does it allege how any purported

10

blocking of the van which seemingly was not blocked by him at all —driven by a government contractor—intended for transporting detainees, related to or impacted the execution of any warrant that day. The Information does not even allege that he *did* in fact block a van from entering.

This Circuit applies heightened scrutiny to criminal statute interpretation, reflecting constitutional due process concerns and separation of powers principles. For example, in *United States v. Spencer*, this Circuit declared that when faced with a criminal statute, it "will not extend its scope beyond the situations contemplated by the legislation." 517 F.2d 923, 925 (9th Cir. 1975). The Supreme Court has similarly cautioned that "judicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness." *Id.* (citing *Pierce v. United States*, 314 U.S. 306, 311 (1941)). Here, this Court should not take the government's invitation to expand the application of Section 1501 to encompass Mr. Huerta's activity outside the gates of Ambiance Apparel after the warrant had already been executed and the search was well underway—activity outside that was merely auxiliary to executing a search warrant *inside* the premises—when it is not alleged or specified in any way in the Information itself.

## CONCLUSION

In sum, the Information fails to allege that Mr. Huerta obstructed, resisted, and opposed government personnel or vehicles in executing and serving a warrant within the meaning of Section 1501. Accordingly, the Information charging Mr. Huerta with obstruction of a duly issued search warrant fails to state a plausible crime against him, and the Information should be dismissed.

A Proposed Order is attached to this Motion.

| | | |
|---|---|---|
| 1 | Dated: January 6, 2026 | Respectfully submitted, |
| 2 | | LOWELL & ASSOCIATES, PLLC |
| 3 | | By:  */s/ Abbe David Lowell* |
| 4 | | Abbe David Lowell |
| 5 | | MCLANE, BEDNARSKI & LITT, LLP |
| 6 | | |
| 7 | | By:  */s/ Marilyn E. Bednarski*<br>Marilyn E. Bednarski |
| 8 | | |
| 9 | | *Attorneys for Defendant David Huerta* |

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant David Huerta certifies that this brief contains 3,577 words, which complies with the word limit of 7,000 words, as set forth in Standing Order 5(b).  ECF 43 at 5.

                           */s/ Marilyn E. Bednarski*
                             Marilyn E. Bednarski